IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tron M. Littlejohn, # 250174, | ) C/A No.: 1:09-1718-TLW-SVH |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | ) |
| Warden Cecilia R. Reynolds, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Petitioner Tron M. Littlejohn filed this pro se petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. §

636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on

Respondent's motion for summary judgment and return. [Entry ##16, 17]. Pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the

summary judgment and dismissal procedures and the possible consequences if he failed to

respond adequately to Respondent's motion. [Entry #18]. Petitioner filed a response in

opposition to Respondent's motion. [Entry #20]. Having carefully considered the parties'

submissions and the record in this case, the court finds that Respondent's motion for

summary judgment should be granted.

I.      Procedural Background

In December 2002, Petitioner was indicted in Spartanburg County for distribution

of crack cocaine (02-GS-11-0851) and distribution of crack cocaine within half a mile of

a school (02-GS-11-0852). On January 14–15, 2003, Petitioner had a jury trial before the

Honorable J. Derham Cole, in which he was represented by Thomas Shealy, Esquire. Petitioner was convicted as charged, and Judge Cole sentenced him to concurrent sentences of fifteen years on each charge. PCR App. 343, 392–93.

Petitioner filed a notice of appeal with the South Carolina Court of Appeals, and was represented by Wanda H. Haile of the South Carolina Office of Appellate Defense. Counsel filed an *Anders*[1] Brief and a petition to be relieved as counsel. Petitioner filed a pro se brief.

On May 6, 2004, the South Carolina Court of Appeals dismissed the appeal after an *Anders* review. *State v. Littlejohn*, 2004-UP-304 (S.C. App. 2004). PCR App. 367. Petitioner's pro se Petition for Rehearing was denied. The Remittitur issued June 25, 2004.

Petitioner filed a pro se application for Post-Conviction Relief ("PCR") on August 5, 2004, and an amended application on April 18, 2005. An evidentiary hearing was held on Petitioner's PCR before the Honorable Roger L. Couch on May 23, 2006, at which Petitioner testified and was represented by Thomas J. Quinn, Esquire. By order dated January 9, 2007, Judge Couch denied the PCR. PCR App. 514.

---

[1] *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

Petitioner filed a notice of appeal, and Thomas J. Quinn continued to represent him on his PCR appeal. Counsel filed a *Johnson*[2] petition for writ of certiorari and a petition to be relieved as counsel. Petitioner filed a pro se brief and a motion for leave to file a motion pursuant to Rule 60, SCRCP. On June 2, 2008, the supreme court issued an order denying the petition for certiorari and found the Rule 60 motion to be inappropriate. Following the denial of a pro se Petition for Rehearing, the Remittitur issued on June 26, 2008. This habeas petition followed.

II.     Discussion

        A.      Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:

Ground One:     Petitioner contends the trial court lacked subject matter jurisdiction because of alleged pre-indictment delay.

Ground Two:     Petitioner contends the trial court lacked subject matter jurisdiction because the indictment was "flawed" inasmuch as the SLED report identifying the substance was not issued until January 8 , 2003, after the indictments were presented to the grand jury on December 19th, 2002.

---

    [2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

| | |
|---|---|
| Ground Three: | Petitioner contends counsel failed to object to or move for a mistrial for allegedly improper comments made by the solicitor. |
| Ground Four: | Petitioner contends there were conflicts with his defense counsel, the assistant solicitor, and the trial judge, inasmuch as he asserts defense counsel refused to represent him when he was charged with threatening a school teacher who went to defense counsel's church; the solicitor instructed a remedial class he had to take as part of his juvenile sentence, and also was trying to prosecute juvenile charges against Petitioner that were dismissed; and the trial judge had earlier set a bond on Petitioner for a probation revocation matter. |
| Ground Five: | Petitioner contends his counsel failed to object on the basis that his distribution indictment did not charge him with possession in the body or face of the indictment. |
| Ground Six: | Petitioner contends counsel was ineffective for failing to adequately argue the motion to dismiss based on pre-indictment delay. |
| Ground Seven: | Petitioner asserts his counsel should have sought a jury charge on mere possession of crack, because the SLED analyst found the crack had been smashed under pressure when he opened it. |
| Ground Eight: | Petitioner next contends his counsel was ineffective for failing to make a directed verdict based on the chemist's testimony that because the substance had been mashed one could not tell if it was crack or powder by looking at it. |
| Ground Nine: | Petitioner asserts his counsel should have requested a charge on entrapment, because the officer completed the chain of custody form for Alicia Foster. |
| Ground Ten: | Petitioner next contends his counsel was ineffective for failing to conduct discovery and investigation. |
| Ground Eleven: | Petitioner next contends his counsel failed to adequately impeach Foster with her record or pending charges. |
| Ground Twelve: | Petitioner next contends his counsel failed to have the video analyzed by an expert. |

Ground Thirteen:       Petitioner contends his counsel failed to object to the prosecutor's use of race in selecting the jury.

Ground Fourteen:       Petitioner next contends his counsel failed to move for a continuance and bond.

Ground Fifteen:        Petitioner asserts his counsel was ineffective for not arguing that the chain of custody was improper inasmuch as the crack arrived at the SLED analyst "mashed under pressure", but the custody forms do not indicate the condition of the substance (and thus, presumably, when that happened).

Ground Sixteen:        Petitioner asserts his counsel should have more strenuously objected to the SLED agent's qualifications to test the substance.

Ground Seventeen:      Petitioner next contends his lawyer failed to object to and exclude the in-court identification of Petitioner by Foster, as she was never shown a photographic lineup.

Ground Eighteen:       Petitioner next contends his counsel was ineffective for failing to present his alibi witness, Tanya Davidson.

Ground Nineteen:       Petitioner next asserts his counsel failed to timely assert his objection to the chain on the drugs, based on the fact that Foster did not notarize the documentation when she turned over the drugs.

Ground Twenty:         Petitioner's next ground for relief is that counsel was ineffective for advising him to testify.

Ground Twenty-one:         Petitioner contends that his counsel failed to object to sentence enhancement by way of a prior possession of marijuana that he asserts is not him.

Ground Twenty-Two:         Petitioner contends his counsel was ineffective for referring to Foster as an undercover operative.

B.    Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement

of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.     Habeas Corpus Standard of Review

        1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.	Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254 ("Section 2254").  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.	Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)	(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

> (A)	the applicant has exhausted the remedies available in the courts of the State; or

> (B)	(i) there is an absence of available State corrective process; or

> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so

will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[4] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[4]If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a

petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing

of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.    Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

D.    Analysis

1.    Procedurally-Barred Grounds

Procedural default is an affirmative defense which is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). It is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir.1995).

As to certain of Petitioner's claims, Respondents have asserted they are procedurally barred even though they were raised in Petitioner's *Johnson* petition or pro se brief that were denied by the South Carolina Supreme Court. Respondent argues that an issue raised and rejected on appeal by a *Johnson* brief or an *Anders* brief is insufficient

for exhaustion purposes because it "is not on the merits," *citing State v. Lyles*, 673 S.E.2d 811 (S.C. 2009). This argument has been consistently rejected by the judges of this court. *See Goins v. Stevenson*, 08-3916-RBH, 2010 WL 922774 (D.S.C. March 9, 2010); *Mouzon v. Warden*, 09-2253-RBH, 2010 WL 1430464 (D.S.C. March 5, 2010); *Missouri v. Beckwith*, 08-2878-SB, 2009 WL 3233521 (D.S.C. Sept. 29, 2009); *Ehrhardt v. Cartledge*, 08-2266-CMC, 2009 WL 2366095 (D.S.C. July 30, 2009); *Singleton v. Eagleton*, 08-2539-RBH, 2009 WL 2252272 (D.S.C. July 28, 2009). Therefore, the court finds Petitioner has properly exhausted such claims, and they are addressed on their merits below.

> 2.      Merits Review

Several of Petitioner's twenty-two grounds relate to the same subject.  When appropriate, the court considers grounds grouped by subject matter, rather than reviewing all grounds in strict numerical sequence.

> > a.      Grounds relating to indictment and trial court's subject matter jurisdiction (Grounds One, Two, Five, Six)

In several of Petitioner's grounds, he alleges claims relating to defects in the indictment and the trial court's subject matter jurisdiction.

In Ground One, he alleges the trial court lacked subject matter jurisdiction because of alleged pre-indictment delay, and in Ground Six, he contends trial counsel was ineffective for failing to adequately argue the motion to dismiss based on pre-indictment delay.  In Ground Two, he contends the trial court lacked subject matter jurisdiction

because the indictment was flawed, and in Ground Five, Petitioner contends his counsel was ineffective in failing to object to the indictment as not having charged him with possession.

As to his first argument, Petitioner contends that the delay was too long between the incident on May 3, 2002, and his arrest in November of 2002. He claims this delay violated his due process rights and deprived the trial court of subject matter jurisdiction to try him. PCR App. 23–28. Trial counsel moved to dismiss the indictment on account of the pre-indictment delay, and received testimony from police officers that indicated the delay was a result of their decision to continue to use the confidential source in targeting street dealers, and not to prejudice Petitioner. PCR App. 29–49. Petitioner was brought to trial within two months of his arrest. After hearing the argument of counsel, the trial court denied the motion to dismiss.

Petitioner raised the issue of pre-indictment delay as a due process violation in his *Anders* brief and in his PCR application, but the PCR court did not address it as a subject matter jurisdiction claim. He raised it again in his PCR appeal.

After reviewing the arguments, the court finds that even if pre-indictment delay raises an issue of subject-matter jurisdiction, it would not be cognizable in federal habeas corpus. At the time of Petitioner's conviction, South Carolina courts applied the rule that a "circuit court has subject matter jurisdiction over a criminal offense if: (1) there has been an indictment that sufficiently states the offense; (2) there has been a waiver of

indictment; or (3) the charge is a lesser-included offense of the crime charged in the indictment." *State v. Dudley*, 581 S.E.2d 171, 175 (S.C. App. 2003).

Since the time of Petitioner's conviction, the South Carolina Supreme Court has clarified the meaning of subject matter jurisdiction in criminal matters, distinguishing between subject matter jurisdiction and defects in the indictment. *See State v. Gentry*, 610 S.E.2d 494, 498–500 (S.C. 2005) (explaining difference between jurisdiction and defective indictments and noting that a defective indictment alone does not deprive trial court of jurisdiction). The court in *Gentry* noted that "subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong. . . . Circuit courts obviously have subject matter jurisdiction to try criminal matters." *Id.* at 499. Defects in the indictment, in contrast, are not jurisdictional. The court held that:

> if an indictment is challenged as insufficient or defective, the defendant must raise that issue before the jury is sworn and not afterwards . . . .. However, a defendant may for the first time on appeal raise the issue of the trial court's jurisdiction to try the class of case of which the defendant was convicted.

*Id.* The court also noted that "a presentment of an indictment or a waiver of presentment is not needed to confer subject matter jurisdiction on the circuit court. However, an indictment is needed to give *notice* to the defendant of the charge(s) against him." *Id.* at 499 n.6.

Regardless of whether Petitioner's challenge is treated as a challenge to the indictment or as a challenge to the trial court's subject matter jurisdiction, his argument

fails. Because the record establishes that a Spartanburg County Grand Jury returned a true bill of indictment against Petitioner in December 2002, and because, under *Gentry*, circuit courts have subject matter jurisdiction to try criminal matters, his argument that the trial court lacked jurisdiction over him is meritless.

Second, Petitioner's Ground One concerns a state court's determination of its jurisdiction over a purely state law criminal charge, which is not a matter cognizable in federal habeas corpus. *See Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998) (*citing Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976), which held that a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary")). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). For this additional reason, Ground One should be dismissed.

As to Petitioner's related Ground Six argument that trial counsel was ineffective for failing to adequately argue the motion to dismiss based on pre-indictment delay, this claim is without merit. While Petitioner complains counsel should have investigated more or should have argued better, he does not provide any evidence that would have changed the result. *See Bassette v. Thompson*, 915 F.2d 932 940–41 (4th Cir. 1990) (finding petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (finding applicant could not establish ineffective

assistance of counsel "based on vague and conclusory allegations"). Counsel raised the issue of pre-indictment delay in a motion to dismiss, but the trial court denied that motion. Petitioner's claim that he should have raised the issue is without support. Further, Petitioner cannot demonstrate he was prejudiced, as he has not demonstrated the trial court was objectively unreasonable in rejecting the motion to dismiss, considering the *Gentry* discussion above. Ground Six should be denied.

In Ground Two, Petitioner allege contends the trial court lacked subject matter jurisdiction because the indictment was "flawed" inasmuch as the SLED report identifying the substance was not issued until January 8, 2003, after the indictments were presented to the grand jury on December 19, 2002. The evidence shows that at trial, the SLED chemist testified he received the crack on December 20, 2002, at which time he performed a presumptive test and then weighed it. He then performed the conclusive test. PCR App. 242–44. At PCR, Petitioner complained that the indictment was issued before the SLED analysis report was issued. PCR App. 421–23.

It appears this issue is procedurally barred, as Petitioner failed to make a contemporaneous objection at trial to an alleged defective in the indictment. As the *Gentry* court noted, issues concerning the insufficiency or defective nature of the indictment itself require a contemporaneous objection to be preserved on appeal. *Gentry* 610 S.E.2d at 500. Thus, to be preserved, Petitioner would have had to objected to this issue at trial and then raised the issue on direct appeal. *Drayton v. Evatt*, 430 S.E.2d 517 (S.C. 1993). Because Petitioner failed to assert a lack of subject matter jurisdiction from

a defective indictment at trial, his claim is procedurally barred from habeas review. *State v. Young*, 459 S.E.2d 84 (S.C. 1995) (noting that, to be preserved for appeal, issue must have been raised to and ruled upon by trial judge).

Furthermore, because the issue concerns a matter of state constitutional and jurisdictional law, and does not implicate any federal constitutional claims, the issue is not cognizable in federal habeas corpus even if it had not been procedurally defaulted. *See Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (noting that while habeas may be granted for a lack of jurisdiction in the sentencing court, relief may not be granted when alleged jurisdictional defect depends on interpretation of state law, unless result is complete miscarriage of justice). The issue should be dismissed or denied.

In Ground Five, Petitioner contends his counsel was ineffective in failing to object to the indictment as not charging him with possession in the body or face of the indictment. Petitioner's argument appears to be that because the statute cited in the indictment only mentions S.C. Code Ann. § 44-53-375, and not S.C. Code § 44-53-370, that somehow the trial court lacked subject matter jurisdiction and trial counsel was ineffective for failing to object on this ground.

The PCR court found no subject matter jurisdiction issue under state law, as the alleged defects in the indictment do not give rise to a subject matter jurisdiction issue under *Gentry*, and counsel could not have been deficient in failing to object to the indictment. For the reasons stated in Ground One, this is not proper ground for habeas review. *See Wright v. Angelone*, 151 F.3d at 158. This ground should be dismissed.

b.   Ground Three

In Ground Three, Petitioner contends trial counsel was ineffective for failing to object to, or move for a mistrial for, allegedly improper comments made by the solicitor during a motions argument and during closing argument. The solicitor made the following comments during the motions argument regarding the pre-indictment delay:

> Whether this is a danger to the community, I agree with Deputy Guyton when he indicates that it's better to arrest 52 individuals rather than one. So the greater good comes from a delay. That's an ethical or a judgment or a moral call, it has nothing to do with whether or not this defendant's rights were violated as far as due process. If the State, through the Sheriff's Office or through the Solicitor's Office, was intentionally trying to delay this case, we certainly wouldn't have indicted him in December and certainly wouldn't have the drugs tested and certainly wouldn't have been ready in January, within three months of his arrest, to try the case.

PCR App. 70.

Petitioner now claims that counsel should have objected to the solicitor's comments.  As the PCR court noted denying the claim, the solicitor's comments were only made to the trial judge in argument on a legal issue when the jury was not present, and thus could not have been prejudicial. PCR App. 431–34.

The court's review of the record finds no merit to Petitioner's claim.  The solicitor's comments were made in response to testimony by Deputy Guyton that police did not immediately arrest Petitioner because they were still targeting other street dealers in an area from which there had been complaints.  The trial court heard arguments of counsel in an effort to rule on Petitioner's motion to dismiss on account of the pre-indictment delay.  The solicitor's reasons for delay and argument that the delay should be

balanced against any prejudice was directly relevant to the discussion. Trial counsel had no basis to object to the argument, especially in light of its taking place outside of the presence of the jury. Further, Petitioner can show no prejudice from trial counsel's failure to object. *See Hough v. Anderson*, 272 F.3d 878, 897 (7th Cir. 2001) ("An ineffective assistance claim based on a failure to object is tied to the admissibility of the underlying evidence. If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test; failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted."). This issue should be dismissed.

Ground Three also includes Petitioner's contention that his trial counsel was ineffective for failing to object to the solicitor's following comments during closing:

> The officers had these two individuals, Lorraine McFalls and Alicia Foster, go out and buy drugs. And why did they have Lorraine McFalls and Alicia Foster to do this? Why did they pick them? Because they could, Ladies and Gentlemen? You and I can't go out to Berkeley Apartments, ride up in a car and get out and offer somebody twenty dollars ($20) and expect to get a rock of crack cocaine. We just can't do it.

PCR App. 314. The solicitor further argued that the officer could not purchase the crack either, and that while McFalls and Foster were not pillars of the community, they were able to buy the crack because they knew how to "talk the talk and walk the walk." The solicitor noted he was responding to defense argument that McFalls and Foster lacked credibility. PCR App. 314–15.

At PCR, Petitioner complained counsel failed to object to this testimony, inasmuch as the solicitor implied he was "one of the jury." PCR App. 434–35. Trial counsel testified he saw no basis for objecting to the argument. PCR App. 490, 503–04. The PCR court found neither prejudice nor deficiency, noting that the argument was permissible and not prejudicial.  PCR App. 518–19.

When examining claims pertaining to improper comments by a prosecutor, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). However, the *Darden* Court noted that "it is not enough that the remarks were undesirable or even universally condemned." *Id.* (internal quotation omitted). Having reviewed the record and considered the weight of the evidence and the extent of these comments, the court finds that the solicitor's comments did not render Petitioner's trial fundamentally unfair. The solicitor was entitled to argue credibility of the witnesses, see *State v. Caldwell*, 388 S.E.2d 816 (S.C. 1990), and may argue the evidence in the record and its reasonable inferences, *State v. Copeland*, 468 S.E.2d 620, 624 (S.C. 1996). Trial counsel argued aspects about McFalls and Foster that made them less than credible, and the solicitor responded as to their knowledge of the street, the drug trade, and their ability to make a drug buy.

Further, Petitioner has failed to establish that there is a reasonable probability that the result of the proceeding would have been different if trial counsel had preserved these

objections. *Strickland*, 466 U.S. at 694. Therefore, Petitioner cannot establish that trial counsel was constitutionally ineffective in failing to preserve his objections during closing arguments. Moreover, Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams v. Taylor*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on these grounds.

c. Ground Four

In Ground Four, Petitioner contends there were conflicts with his defense counsel, the assistant solicitor, and the trial judge.

Petitioner argues defense counsel refused to represent him when he was charged with threatening a school teacher who attended defense counsel's church. The Fourth Circuit recently recognized that certain potential conflicts of interest may not, in practice, contravene an attorney's duty of loyalty:

> In *Cuyler v. Sullivan*, the Court held that "the possibility of conflict is insufficient to impugn a criminal conviction." 446 U.S. 335, 350 (1980). To establish a violation of the Sixth Amendment, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. If a defendant can prove these two elements—that his attorney labored under an actual conflict of interest and that the attorney's conflict adversely affected his representation—then prejudice is presumed. *Strickland*, 466 U.S. at 692 (citing *Cuyler*, 446 U.S. at 348-50). "Adverse effect cannot be presumed," however, "from the mere existence of a conflict of interest." *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002).

Stephens v. Branker, 570 F.3d, 198, 208–09 (4th Cir. 2009). To show an "actual conflict of interest," Petitioner would have to "'show that [his] interests diverge[d] [from his

attorney's] with respect to a material factual or legal issue or to a course of action.'" (*quoting Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir.1998) (en banc)).

Petitioner has not made this requisite showing. Even if counsel did not feel comfortable defending Petitioner in a prior case in which counsel's fellow churchgoer was the accuser, Petitioner has shown no such issue in this case, and trial counsel expressed no concern. Further, Petitioner has shown no prejudice in the form that trial counsel forewent a plausible and objectively reasonable defense or strategy in this case because of his relationship with the churchgoer in the prior case. *Branker*, 570 F.3d 208–09. The issue should be dismissed.

Petitioner next alleges he had a conflict with the assistant solicitor because he (1) had prosecuted the person who murdered Petitioner's sister, and the family was not happy with the results; (2) instructed a remedial class Petitioner had to take as part of his juvenile sentence; and (3) also was trying to prosecute juvenile charges against Petitioner that were dismissed. The assistant solicitor testified that he once spoke at the "Back in Control" class on his job, but was never an instructor. He stated that he knew of Petitioner, as he used to do juvenile prosecutions and had previously prosecuted Petitioner. He stated he had no conflict. PCR App. 509–10.

Petitioner has failed to demonstrate a conflict with respect to the solicitor. The government's charging decisions are presumptively lawful, and Petitioner must show through objective evidence (1) that the prosecutor acted with genuine animus towards the Petitioner, and (2) that the defendant would not have been prosecuted but for that animus.

*United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001). Petitioner has failed to show such proof here from the solicitor's mere participation in a class or involvement in prior prosecutions. Petitioner has failed to show that the prosecution was only sought because of animus. The record shows the charges against Petitioner were supported by evidence and were part of an ongoing operation that included many unrelated defendants. This issue should be dismissed.

Petitioner finally contends the judge had an conflict because he had denied Petitioner bond for a probation revocation matter. Petitioner has presented no evidence that indicated the trial judge had a personal bias against him that would require his recusal. *State v. Cheatham*, 561 S.E.2d 618, 624 (S.C. App. 2002) (finding it insufficient for a party seeking disqualification to simply allege bias, party must show some evidence of personal, as distinguished from judicial, bias).

After a review of the record, the court finds that Petitioner fails to show that the South Carolina Supreme Court unreasonably applied federal law or made an unreasonable determination of the facts in addressing this claim. Therefore, the court recommends dismissal of this issue.

d.     Ground Seven

In Ground Seven, Petitioner asserts his counsel was ineffective for failing to seek a jury charge on mere possession of crack, because the SLED analyst found the crack had been smashed under pressure when he opened it.

At PCR, Petitioner complained that his counsel did not seek a lesser-included offense of possession of cocaine, because the chemist could not initially visually determine whether the substance was crack cocaine or powder cocaine, as it had been crushed. PCR App. 441–44. Counsel testified he saw no basis for asking for a lesser-included offense, as there was no evidence that the informant received anything but crack as the chemist's test confirmed. The only issue was whether Petitioner was the one who sold the crack. PCR App. 492.

The PCR court found as a matter of state substantive law that, although possession of cocaine can be a lesser-included offense, a lesser-included-offense instruction is only warranted when there is some evidence to support it. *See State v. Franks*, 658 S.E.2d 104 (S.C. 2008) The court found no such evidence in the record. PCR App. 522. The court's review of the record shows no evidence to warrant a lesser-included charge of cocaine possession. The testimony only described a distribution and no evidence of simple possession. There was also no evidence that powder cocaine was sold. The analyst testified that he tested the substance and confirmed it was crack. PCR App. 250. Petitioner has failed to demonstrate that his trial counsel was ineffective for failing to request a lesser-included-offense charge, as the record is devoid of any support for such a charge. The issue should be dismissed.

e.      Ground Eight

In Ground Eight, Petitioner asserts his counsel was ineffective for failing to make a motion for a directed verdict based on the chemist's testimony that because the substance had been mashed, one could not tell if it was crack or powder by looking at it.

The PCR court's directing a verdict was not warranted because the evidence was clear that rocks were purchased and the chemist's tests found the substance to be crack cocaine. Petitioner's argument mischaracterizes the evidence.  The chemist testified he could not tell if the substance was crack or powder by looking at it because it was mashed.  However, his tests left no speculation that the substance was crack. PCR App. 250.  Petitioner has failed to demonstrate that his trial counsel was ineffective for failing to move for a directed verdict because the crack had been mashed.  The issue should be dismissed.

f.      Ground Nine

In Ground Nine, Petitioner asserts his counsel was ineffective for failing to seek a charge on entrapment on the grounds that the officer completed the chain of custody form for Alicia Foster.

At PCR, Petitioner complained that the officers were framing him, but counsel never made a motion to that effect at trial. The PCR court rejected the claim, finding counsel more credible that Petitioner, and finding no evidence of entrapment such that counsel should have pursued the defense. PCR App. 524.

The affirmative defense of entrapment is available when there is the "conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for trickery, persuasion, or fraud of the officer." *State v. Brown*, 607 S.E.2d 93, 95 (S.C. App. 2004) (internal citations omitted). However, the defense of entrapment is not available to a defendant who is predisposed to commit a crime independent of governmental inducement and influence. Thus, the entrapment defense consists of two elements: (1) government inducement, and (2) lack of predisposition. *Id.* The fact that a government official merely affords opportunities or facilities for the commission of the offense does not constitute entrapment. *State v. Johnson*, 367 S.E.2d 700, 701 (S.C. 1988).

At trial, Petitioner testified he did not sell the crack. Further, the evidence presented at trial did not support an inference that the seller on the video was not predisposed to sell the crack he had on his person as he stood on a street corner. With no evidence to support a defense of entrapment, counsel could not have been deficient nor Petitioner prejudiced from failing to pursue the defense. *See Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996) (if there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error in failing to disclose or pursue it cannot be prejudicial). The issue should be denied.

g.     Grounds Ten, Eleven, Twelve, and Eighteen

In Ground Ten, Petitioner asserts his counsel was ineffective for failing to conduct discovery and investigation. Petitioner breaks this Ground into the following alleged

errors on pages 25–28 of his Petition: (1) failure to suppress the electronic surveillance; (2) failure to do NCIC checks on CI's; and (3) failure to get alibi witness subpoenaed.

(1)    Failure to suppress the electronic surveillance

Petitioner's initial allegation in Ground Ten overlaps with his allegation in Ground Twelve. In Ground Ten, Petitioner asserts his counsel was ineffective in failing to move to suppress the video and audio of the transaction on the grounds that the chain of custody on the tapes was never turned over in discovery, and that the surveillance did not comport with S.C. Code Ann. § 17-30-70 (which deals with orders authorizing the interception of wire, oral, or electronic communications). In Ground Twelve, Petitioner alleges trial counsel was ineffective for failing to have the video analyzed by an expert to show whether it had been altered.

The PCR court found that counsel had investigated the case and that Petitioner had failed to show any evidence was illegally seized. The court found Petitioner not to be credible in his claim the tape was altered, and that counsel was credible. Finally, the court concluded Petitioner failed to show tape was altered or Petitioner was prejudiced by not having the tape analyzed. PCR App. 525–27.

Petitioner has failed to show that the state courts unreasonably applied the law or determined the facts on this issue. State law did not require an order for Foster to record a conversation in which she was participating. *See, e.g.,* S.C. Code Ann. 17-30-30 (providing it to be lawful to intercept certain communications when "the person is a party to the communication or one of the parties to the communication has given prior consent

to the interception.").  Furthermore, no chain of custody is required for the tape, only authentication under Rule 901, SCRE. *See State v. Aragon*, 579 S.E.2d 626 (S.C. App. 2003). Officer Gibson testified he placed the tape in a locked cabinet after the buy, and that it represented the events of May 3, 2002 without alteration, addition, or deletion. PCR App. 148.

At the PCR hearing, trial counsel testified he saw no indication the original tape had been altered, stated there was no difference between the original and the one played at trial, and Petitioner has failed to offer any credible evidence to dispute the authenticity of the tape. *Bassette v. Thompson*, 915 F.2d at 940–41 (finding petitioner's allegation that attorney did ineffective investigation unsupportable absent proffer of the supposed witness's favorable testimony).  Petitioner has failed to show the state courts unreasonably determined the facts or applied the law in addressing this issue.  Petitioner has not met his burden under *Strickland* in demonstrating that his trial counsel was ineffective on this issue.

(2)     Failure to do NCIC check on CI's

Petitioner's next contention overlaps with his allegation in Ground Eleven. Petitioner alleges his counsel was ineffective for failing to do a NCIC check on Alicia Foster (Ground Ten) and for failing to adequately impeach her with her record or pending charges (Ground Eleven). At PCR, Petitioner admitted that his trial counsel had brought out Foster's pending charges, but claims he should have done more to investigate her

background. Petitioner claims Foster had a prior conviction for possession of drug paraphernalia that was not brought out. PCR App. 459–50.

The PCR court found counsel credible, and concluded that even if Foster had such a prior offense, it was not admissible under Rule 609, SCRE, as the punishment was not greater than one year. PCR App. 493–96. The court also found no prejudice, given the strength of the evidence and the other cross-examination in which trial counsel brought out Foster's arrests and the fact that she had been a prostitute. PCR App. 525–26.

Petitioner has failed to demonstrate trial counsel was ineffective. He offered no proof of the prior conviction for drug paraphernalia, or any testimony from Foster as to how she would have answered questioning regarding this alleged conviction. As Foster did not testify at the evidentiary hearing, any discussion regarding what she would have testified about at trial is purely speculative. *See Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness's failure to testify at trial"). Thus, Petitioner has not met his burden of proof under *Strickland*, and has also failed to demonstrate that the elicitation of a minor conviction would create a reasonable probability of a different result.

(3)     Failure to get alibi witness

Petitioner's next contention is identical to his claim in Ground Eighteen: that his counsel was ineffective for failing to present his alibi witness, Tanya Davidson.

At the PCR hearing, counsel stated Petitioner never said he knew what he was doing on the day of the incident, and stated he was never provided the name of Tanya Davidson as an alibi witness. PCR App. 496. The PCR court found counsel credible and found that not only had Petitioner not claimed to counsel that Davidson was an alibi witness, but also that Petitioner failed to show prejudice because he failed to call Davidson to testify. PCR App. 530–31.

Petitioner has failed to show the state courts unreasonably determined the facts or applied the law in addressing this issue. Trial counsel cannot be deemed ineffective where Petitioner did not tell him about a supposed alibi witness, as the PCR court found. *Collins v. Francis*, 728 F.2d 1322,1349 (11th Cir. 1984) (finding counsel was not ineffective for failing to investigate witnesses about whom defendant did not tell him). Likewise, Petitioner failed to show prejudice by not producing Davidson to testify at the PCR hearing. The issue should be dismissed.

h.     Ground Thirteen

In Ground Thirteen, Petitioner asserts his counsel was ineffective for failing to object to the prosecutor's use of race in selecting the jury.

At PCR, Petitioner claimed a juror named Jimmy Cash was a white officer with the Cherokee County police. Petitioner admitted he did not know if the officer was a racist. PCR App. 454. Counsel testified he personally knows Officer Jimmy Cash and the juror was not the officer, but that had it been the officer, he would have challenged him for cause. PCR App. 494–95. The PCR court found counsel to be credible and Petitioner

not to be credible, and thus rejected the claim. PCR App. 527. Petitioner having failed to demonstrate any evidence of racism or bias, his claim for ineffective assistance of counsel on this issue must fail. This issue should be denied.

### i. Ground Fourteen

In Ground Fourteen, Petitioner asserts his counsel was ineffective for failing to move for a continuance and bond. Petitioner testified that bond was denied, but alleges that counsel should have obtained a continuance to do more investigation. PCR App. 455–57. Counsel testified he was ready for trial and had no basis for seeking a continuance. PCR App. 495. The PCR court rejected the claim, finding that counsel was credible in stating he was prepared, and finding Petitioner had not met his burden of proof.

As to a continuance, there is support in the record for counsel's statement that he was prepared and had no basis for a continuance. Petitioner has failed to show anything to the contrary, and has not shown any valid basis for a continuance that also would raise a reasonable probability of a different result. Petitioner has failed to show that counsel did an insufficient investigation or that there was resulting prejudice. *See Bassette v. Thompson*, 915 F.2d at 940–41 (finding petitioner's allegation that attorney did ineffective investigation unsupportable absent proffer of the supposed witness's favorable testimony).

Further, the denial of pre-trial bond is not a valid issue in habeas corpus. Therefore, this issue should be dismissed.

j.     Grounds Fifteen and Nineteen

In Ground Fifteen, Petitioner asserts his counsel was ineffective for failing to argue that the chain of custody was improper inasmuch as the crack arrived at the SLED analyst "mashed under pressure," but the custody forms do not indicate the condition of the substance (and thus, presumably, when that happened).   In Ground Nineteen, Petitioner asserts his counsel was ineffective for failing to timely assert his objection to the chain on the drugs, based on the fact that Foster did not notarize the documentation when she turned over the drugs.

At trial, the State established the chain of the drugs by introducing testimony that the drugs went from Foster to Officer Gibson to Officer Foster to SLED Agent Ford. PCR App. 146–47, 202–06, 228–30, 240–41.  At PCR, Petitioner complained that the Rule 6, S.C.R. Crim. P. forms did not show when the rock was crushed while in the evidence bag. PCR App. 443–44. The PCR court rejected the allegation that counsel was ineffective for failing to argue the chain of custody was improper, finding Petitioner failed to show that the chain was inadequate or that the cross-examination was insufficient. PCR App. 528–30.

Proof of a chain of custody does not need to negate all possibility of tampering. *State v. Williams*, 376 S.E.2d 773 (S.C. 1989). South Carolina courts have excluded evidence only when there is a "missing link" and "the identity of those who handled the evidence is not established as far as practicable."  Evidence regarding care of the drugs goes to weight, not admissibility. *State v. Governor*, 608 S.E.2d 474 (S.C. App. 2005).

Mere weakness in the chain is a question of credibility, not admissibility. *See State v. Williams*, 376 S.E.2d 773 (S.C. 1989).

Here, the chain was established as far as practicable, and any issue as to the crack being mashed at some point went, at best, to weight. Because there was no valid objection to be made, counsel could not have been deficient for failing to assert an objection, nor Petitioner prejudiced. The issue should be denied and dismissed.

Petitioner next claims that his counsel should have objected to the chain on the drugs because Foster did not notarize the documentation when she turned over the drugs. Counsel stated he should have objected earlier to the introduction of the drugs on the basis that Foster did not contemporaneously complete the documentation of her transfer of the drugs to Officer Gibson. The court denied the motion, noting that the State was not relying on reports generated under Rule 6, S.C.R. Crim. P., but on live testimony. PCR App. 251–53.

The PCR court found that counsel did make the objection and preserve the issue, but concluded regardless that the objection to the chain was not valid anyway. PCR App. 531–32.

As discussed above, proof of a chain of custody does not need to negate all possibility of tampering. *State v Williams*, 376 S.E.2d 773 (S.C. 1989). Further, Rule 6, S.C.R. Crim. P., provides for use of forms to obviate the need for chain witnesses and analyzing experts to appear at trial. However, Rule 6 also provides that the defense can insist on the appearance of the expert and chain witnesses. Here, the chain witnesses

appeared and testified as to the chain, thereby minimizing any alleged defect with one of the documents. Petitioner has failed to show that counsel was ineffective for failing to object to the chain on the basis that Foster did not notarize the documentation with the transfer of the drugs, as the judge considered trial counsel's argument and denied it. Petitioner has failed to show that the state courts unreasonably determined the facts or applied the law in addressing this issue. The issue should be denied.

k.      Ground Sixteen

In Ground Sixteen, Petitioner asserts his counsel was ineffective for failing to more strenuously object to the SLED agent's qualifications to test the substance. At trial, the SLED agent noted he had a bachelor's degree in chemistry, had completed the justice academy, had completed training on taking down meth labs, and had completed SLED competency testing in forensic chemistry. The agent noted he had been qualified six times. Counsel initially started to object to qualification in forensic chemistry because the agent's training was at SLED, but said he had no objection to qualification in the field of drug analysis. PCR App. 236–38.

At PCR, Petitioner reiterated his complaint that counsel should have objected "harder." PCR App. 457. The PCR court noted that counsel did prevent qualification in forensic chemistry, and found that Petitioner offered no evidence that the agent was not qualified in drug analysis. PCR App. 529.

The qualification of a witness as an expert falls largely within the trial judge's discretion. The party offering the expert has the burden of showing his witness possesses

the necessary learning, skill, or practical experience to enable the witness to give opinion testimony. For a court to find a witness competent to testify as an expert, the witness must be better qualified than the fact finder to form an opinion on the particular subject of the testimony. Generally, however, defects in the amount and quality of education or experience go to the weight of the expert's testimony and not its admissibility. *See State v. White*, 642 S.E.2d 607 (S.C. App. 2007).

The court's review of the record reveals that Petitioner has failed to demonstrate a valid basis for objection, given the agent met the standard for admission based on his degree in chemistry, his training at SLED, and his prior qualifications. Without a valid basis for objection, Petitioner cannot show that trial counsel was deficient, nor Petitioner prejudiced. *See Hough v. Anderson*, 272 F.3d at 897 (explaining ineffective assistance claims based on failure to object is tied to the admissibility of the underlying evidence; if evidence admitted without objection was admissible, then the complaint fails both prongs of the *Strickland* test, as it was neither deficient nor prejudicial).

Further, Petitioner failed to call the agent or otherwise prove what further examination would have elicited that would have resulted in exclusion of the agent's opinion. Having failed to do so, Petitioner has failed to show how the result of his trial would have been different. This issue should be denied.

l.      Ground Seventeen

In Ground Seventeen, Petitioner asserts his counsel was ineffective for failing to object to and exclude the in-court identification of Petitioner by Foster, as she was never

shown a photographic lineup. In the pre-trial hearing on pre-indictment delay, Foster testified that she had no doubt Petitioner was the individual who sold her crack, because she bought from him a second time on May 17, 2002, which was also recorded. She testified that between the two buys, police showed her the first video and asked her if she remembered making the buy, and she said she did. The police told her that was "Tron Littlejohn." PCR App. 30–41. At trial, Foster identified Petitioner as the individual who sold her crack on May 3, 2002. PCR App. 150–51.

At PCR, Petitioner stated defense counsel should have moved to have the charges dismissed because the identification was tainted. PCR App. 458. Counsel testified he saw no basis for moving to exclude the identification, although he attempted to impeach it. PCR App. 495.

The PCR court found no valid objection to the identification, and found no prejudice in light of the identification made by Lorraine McFalls and the existence of the videotape. PCR App. 529–30.

Petitioner asserts that counsel was ineffective in failing to move to dismiss the charges based on Foster's identification of him. In challenging identification testimony, the Supreme Court has outlined a two-step approach. First, a defendant must prove that the identification procedure was impermissibly suggestive. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Neil v. Biggers*, 409 U.S. 188, 198–99 (1972). "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *Satcher v. Pruett*, 126 F.3d 561, 566

(4th Cir. 1977). "Second, if the procedure was unnecessarily suggestive, a court must look at several factors to determine if the identification testimony is nevertheless reliable under the totality of the circumstances." *Id.*; *see also United States v. Saunders*, 501 F.3d 384, 390 n.1 (4th Cir. 2007) ("When the suggestiveness in the procedure does not reach the impermissible level, the 'potential for error' (or potential for misidentification) is left for testing 'by a course of cross-examination at trial.'") (*quoting Simmons v. United States*, 390 U.S. 377, 384 (1968)). The factors that a court considers in determining the reliability of an identification include the opportunity of the witness to view the criminal during the crime; the witness's degree of attention; the accuracy of the witness's description of the criminal; the level of certainty demonstrated by the witness; and the time between the crime and the identification. *See Neil*, 409 U.S. at 199–200.

After review of the record, the court cannot say that the state court's adjudication of this issue resulted in a decision that was contrary to, or involved an unreasonable application of, federal law, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

Respondent argues that Foster entered into the transaction knowing full well she needed to pay attention to gather evidence, and that the videotape was not shown to her in order for her to make an identification for arrest purposes, but to make sure that she remembered Petitioner's face as she left for the second buy. Given these circumstances, even if it were assumed that showing the video to the Foster prior to her going out to make another buy from Petitioner was a suggestive out-of-court identification, the totality

of these circumstances involving recorded drug buys as part of a police operation preclude a substantial likelihood of misidentification.

Further, even if Foster's identification had been excluded, there was ample evidence of Petitioner's identity, including the identification by Lorraine McFalls and the video of the drug buy. Petitioner has failed to meet his burden under *Strickland*, and this issue should be dismissed.

### m.     Ground Twenty

In Ground Twenty, Petitioner asserts his counsel was ineffective for advising him to testify. Defense counsel noted that Petitioner had initially changed his mind and decided not to testify, but that they wanted to discuss it. Petitioner was the extensively advised of his right to testify by the trial court, had the night to think about it, and ultimately decided to testify. PCR App. 262–71.

At PCR, Petitioner stated he understood it was his decision alone to testify, but stated he took his lawyer's advice to do so to clear up his record. PCR App. 462–64. At the PCR hearing, counsel testified that the decision as to whether Petitioner should testify was impacted by the trial court's decision regarding whether Petitioner had "introduced evidence" to prevent him from making the final closing argument to the jury. PCR App. 496. *See State v. Battle*, 403 S.E.2d 331, 333 (S.C. App. 1991) (noting if defendant offers any evidence at trial, State not deprived of general right to make first and final closing argument to jury). The trial court found Petitioner had introduced evidence during cross-examination in the State's case. As such, counsel explained that his thought was that a

defendant like Petitioner, who testifies well, should go ahead and testify before the Cherokee County jury and deny the charge. Counsel noted Petitioner understood it was his decision alone whether to testify.  PCR  App. 496–97. The PCR court found that counsel was credible and his advice was strategic and reasonable. Further, the court noted the record reflected Petitioner clearly made a voluntary decision on his own. PCR App. 532–33.

Counsel's strategic decision to advise Petitioner to testify and deny the charges under these circumstances was reasonable.  *Fitzgerald v. Thompson*, 943 F.2d 463 (4th Cir. 1991) (noting tactical decision sustainable unless it is both incompetent and prejudicial).  Further, the record reveals that Petitioner made his own choice after extensive colloquy with the judge and multiple discussions with counsel.  The trial judge conducted an on-the-record waiver of Petitioner's right to testify, under *State v. Orr*, 403 S.E.2d 623, 624–25 (S.C.1991), *overruled on other grounds by Franklin v. Catoe*, 552 S.E.2d 718 (S.C. 2001), to determine whether the decision was his and whether it was a knowing and voluntary decision. PCR App. 265–71.  Therefore, there was no prejudice. *See Strickland*, 466 U.S. at 687 (defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Finally, Petitioner has failed to show prejudice, given the strength of the evidence in this case, including the video and McFalls's identification. The issue should be dismissed.

n.      Ground Twenty-One

In Ground Twenty-One, Petitioner asserts his counsel was ineffective for failing to object to a sentence enhancement by way of a prior possession of marijuana that he asserts is not him. At trial, the solicitor noted Petitioner had a prior possession of crack from May 1997, and a prior distribution of crack from February 1998, thereby rendering the present charge a third offense. Petitioner then spoke, and stated he pleaded guilty to those two prior convictions because he "admitted it like a man," but he went to trial here because he was not guilty. PCR App. 340–41. At PCR, Petitioner contended that because he pleaded to the two offenses on the same day, they constituted one offense, and a possession of marijuana charge on his record was not him, even though the address was that of his parents' house. PCR App. 423–25, 481–86.

The PCR court found that the two prior crack convictions occurred almost a year apart and were sufficient to enhance to a third offense. PCR App. 533. South Carolina Code section 17-25-50 only provides that separate offenses are one offense for enhancement purposes if they were committed at times so closely connected in point of time that they may be considered as one offense. The crack offenses here were committed over eight months apart, and thus were properly considered as two prior convictions regardless of whether the marijuana conviction belonged to Petitioner. *See Koon v. State*, 643 S.E.2d 680 (S.C. 2007) (burglary two weeks later in separate building was a second offense for enhancement purposes). Accordingly, counsel was not deficient nor Petitioner prejudiced. The issue should be denied.

o.    Ground Twenty-Two

In Ground Twenty-two, Petitioner asserts his counsel was ineffective for referring to Foster as an undercover operative.  At trial, Foster testified she was no longer "working off charges" at the time of the May 2002 buy, but instead was earning $100 a day making buys for the police. PCR App. 149–50. During cross-examination, trial counsel asked Foster about her relationship with police and asked her what steps they took to qualify her as an undercover operative. PCR App. 181. At PCR, Petitioner contended Foster lied when she said she was a police operative and was paid by the police, because there was no 1099 to show she was employed by the government. PCR App. 466–67. Trial counsel testified Foster was an undercover operative, and the statement was accurate. PCR App. 499.

The PCR court found counsel was not deficient, as Foster had not perjured herself, and also found no prejudice. PCR App. 533–34. The testimony reflects that at the time of the May 3, 2002 buy, Foster was not working off charges, but was being paid to make drug buys. Her relationship with police was fully vetted before the jury. Thus, the description was valid and there was no basis for counsel to have objected.  Further, Petitioner can not show any prejudice. Even if trial counsel had not called Foster an undercover operative, there is no reasonable probability of a different result, where the evidence was strong and Foster's background and relationship with police had been fully vetted before the jury. The issue should be dismissed.

III.   Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment [Entry #16] be granted.

IT IS SO RECOMMENDED.

August 5, 2010                          Shiva V. Hodges
Florence, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**